

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
KEVIN V. BYNG,

                       PLAINTIFF,

             V.

BOB KELLY, EXECUTIVE DIRECTOR, UTICA MUNICIPAL
HOUSING AUTHORITY (HEREAFTER "KELLY"),
BOB CONNELLY, SECURITY, UTICA MUNICIPAL
HOUSING AUTHORITY (HEREAFTER "CONNELLY")
              DEFENDANTS.

COMPLAINT

CASE NO: 6:22-CV-1406
(DNH/ATB)

_____

## COMPLAINT

1. Plaintiff, Kevin V. Byng, pro se, for my complaint states:

### PARTIES, JURISDICTION AND VENUE

2. Plaintiff is a 62 year old person with serious debilitating medical illnesses and serious mental health illnesses, takes 12 medications everyday, currently has a slipped discs with a pinched muscle in his right hip making it barely impossible to walk and frequently falls due to the intense pain.
Due to repeated beatings to the front part of his head by police and CO's, Plaintiff has a damaged Cognitive Behavioral Function (CBF) that negatively affects his thinking, perception and judgment, and memory, and has two (2) lesions in his brain, and is diagnosed with anxiety, depression, and PTSD.
Plaintiff moved into the Utica Municipal Housing Authority (UMHA), Apt. 803A, at 509 2nd St., Utica, NY 13501 on September 1, 2022.   (315) 316-4699
Plaintiff was certified an "Individual Disabled" person by the SSA in July, 2008.
Defendants are high level executives at the UMHA and work full-time at the same address.

3. Defendants are sued in their individual and official capacities at the UMHA, and Plaintiff is, and was at all times, an adult citizen of the United States, a resident of the State of New York and is also classified as a disabled person under NYS Civil Service Law 55-B because of the following current:

Medical Illnesses:  Diabetes 2, COPD, Chronic Leukemia, Chronic Fatigue, High Blood Pressure, Heart Arythmia, Slipped Discs, and Covid, again, etc.
Mental Health Illnesses: Anxiety, Depression, PTSD, Impaired CBF.

4. Defendant Kelly is responsible for insuring that all UMHA residents are treated equally, fairly, are safe in their apartments, must comply with all relevant state and federal laws, must not discriminate, threaten, stereotype, etc. any residents.  Defendant Connelly is responsible for security at the UMHA Perretta Towers where Plaintiff still resides.

5. The gravamen here is that both defendants have intentionally, repeatedly, and maliciously violated Plaintiff's rights to be free of harassment, threats, engaging in abuse of process, malicious abuse of process, racial profiling, have caused Plaintiff to suffer ongoing emotional distress and mental anguish to the point of being paranoid, and feeling completely and totally unsafe in his apartment, in turn violating Plaintiff's rights under the ADA, Rehabilitation Act of 1978, First, Eighth, and Fourteenth Amendment of the U. S. Constitution.

6. This action arises under and is brought pursuant to 42 U.S.C. Section 1983 to remedy the deprivation, under color of state law, of rights guaranteed under the American with Disabilities Act (ADA), Rehabilitation Act of 1978, and the First, Eighth, and Fourteenth Amendment of the U. S. Constitution. The Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1331 and since the causes of action arose in the NDNY, venue is proper under 28 U.S.C. Section 1391 (b).

## PREVIOUS LAWSUITS

7. Plaintiff has not ever filed a previous lawsuit dealing with the same information and facts.

## ADMINISTRATIVE REMEDIES

8. Plaintiff has tirelessly both spoken to and written both defendants many times, and the former UMHA Property Manager, thereby exhausting my administrative remedies.

## STATEMENT OF CLAIM

2

9. The UMHA, under control of by both defendants, is an agency that leases apartments to senior citizens, disabled people, etc., and receives both state and federal funding. As such, defendants are "persons" for purpose of redress under 42 U.S.C. 1983, acted under "color of state law" and the UMHA is "considered a state and federal agency" in which defendants did in fact continuously, intentionally, and maliciously deprive Plaintiff, a physically and mentally certified disabled person, of his rights under the ADA, Rehabilitation Act of 1978, and the First, Eighth, and Fourteenth Amendment of the United States Constitution forcing Plaintiff to feel completely <u>unsafe</u> in his apartment.

<h3 style="text-align:center;">STATEMENT OF FACTS</h3>

10. Around March, 2020, a person by the name of Richard Jackson moved into apartment 803A. He lived there until August 31, 2022 and Plaintiff moved into the same apartment on September 1, 2022. This is highly relevant because of what he did there the entire time he was there, which I was never told about, and discovered over time after I moved in.

11. In September of 2022, Plaintiff invited a few women over to his apartment to just hang out with which is my absolute right. The following day Plaintiff was ordered down to defendant Connelly's office.

12. Once there defendant Connelly stated I was selling drugs out of my apartment. This was a complete falsehood. I denied it, he would not listen stating "it is my job to build a case against you to evict you, and I am <u>going to get you</u>." Plaintiff left scared because he had done nothing wrong.

13. A day or two after that, two residents and two UMHA employees, who will remain nameless at this time to avoid any reprisals, heard about what defendant Connelly did to me and told me "he is no good and <u>threatens people</u> all the time."

14. During the next two weeks and continuing on to present day, Plaintiff has had numerous people come knocking on his door at all hours of the night asking for Richard. When I tell them he no longer lives there, I am being told "I don't believe you, tell him to come to the door or I am going to fuck you up, I will wait here until you come out and <u>beat the shit out of you</u>, etc."

15. I reported this to defendant Connelly who told me "you are full of shit, I will get you"

which is <u>another threat</u>. Since then Plaintiff has learned that shortly after moving in and for almost two years, Richard Jackson ran a drug house out of the same apartment, 803A, selling drugs continuously and running prostitutes in and out.

16. In October, Plaintiff had another guest come stay with him overnight as she had no where to go, her boyfriend had beaten her up bad. UMHA's <u>own written policy</u> states tenants are allowed to have guests stay with them for up to two (2) weeks. She left the same night and two (2) days later returned screaming outside that two (2) men were trying to rape her.

17. Plaintiff went down to the lobby, outside, and saw two (2) men in dark hooded sweatshirts coming toward her. Plaintiff, in trying to do the right and proper thing in good faith, tried to help her. Unbeknownst to Plaintiff, it turned out that the Utica Police Department (UPD) was looking for her and took her away.

18. The following day Plaintiff got called to defendant Kelly's office. After <u>threatening to evict me</u>, defendant Kelly told me "you are not allowed to have any more overnight guests" which is illegal.

19. Later that same day, Plaintiff saw defendant Connelly who <u>threatened Plaintiff</u> stating "you are a piece of shit, I am going to Mr. Kelly's office to get you evicted." Plaintiff was scared, Connelly lied to Mr. Kelly, and tried to have me arrested.

20. It was around this time that Plaintiff began to **<u>fear for his life</u>** due to being <u>seriously ill</u> and being <u>wrongfully evicted out onto the street</u> and the ongoing people, curious as to <u>how they keep getting into this building</u>, coming to Plaintiff's door looking for Richard, and <u>threatening Plaintiff with serious bodily injury.</u> Plaintiff write a letter to defendant Kelly abut all of these serious, very real concerns and gave it to the receptionist to give to him.

21. I received no reply or help. It was also around this time that Plaintiff started to experience a high level of anxiety, much paranoia, worrying about my safety, so much in fact that it is documented with both Ms. Johanna Emrich and Ms. Lisa Johnson, both professional employed women residing in Utica, NY.

22. In early November, Plaintiff met an African American woman named Zhane Barnes at the Utica Public Library. Her mother lives in the same building as Plaintiff, 504A. We started dating and she did stay over night at Plaintiff's apartment a few times. About two (2) weeks later, she and I were walking back to my apartment going into the rear entrance.

23. We noticed there was a meeting going on in the community room and turned around to go in the front entrance.  Suddenly, defendant Kelly comes outside and started screaming at me stating "that <u>black woman</u> does not live here, she is not allowed in this building, you are going to be evicted." After trying to rightfully explain to him that her mother lives here, defendant Kelly waved me off stating "you are a lying piece of garbage" and stormed back inside. This is <u>racial profiling and a continuous malicious abuse of process.</u>

24. Plaintiff started to barricade his door, and still does, at night <u>for fear of</u> Richard's demented "friends" trying to get into the apartment at night.  They are getting into the building by pulling hard on the locked security door.  Plaintiff reported this to defendant Kelly to no avail.

25. Because of this racial profiling and fear of being evicted, Plaintiff elected not to see Ms. Barnes anymore. A few nights later, her mother buzzed her into the building. She came up to my apartment and when Plaintiff told her that we can't see each other anymore, she laid down on the floor and started smoking a cigar.

26. The following morning Plaintiff was called down to see defendant Kelly, again. Once <u>again, he threatened me</u> stating "it is your fault for what happened last night with that black woman. I am going to evict you." It was not my fault as her mother let her into the building. He has no legal standing to tell me that I can not have visitors, especially "black women."

27. Plaintiff continued to have much anxiety, worrying all the time. I was getting very paranoid, unable to sleep, watching for shadows under my door, was, and still is, extremely stressed out to the point of thinking perhaps if I do go to sleep, I will not wake up, and all of this will then be over.

28. I continued to report it to both Ms. Emrich and Ms. Johnson, fearful to leave my apartment, afraid that defendant Kelly would send maintenance men to my apartment to change the locks, try to set me up. etc. My emotional distress and mental anguish kept increasing which is cruel and unusual punishment.

29. At about the end of November, Plaintiff was suffering from Covid 19 again, and was in extreme pain, frequently falling, due to his advanced gait (unstable equilibrium) and pinched muscle between his 2 slipped discs. I asked a woman to stay with me to help me in my apartment with meals, getting around, to call 911 if necessary.

30. Her name is Monoya Houston and she is African American, a friend of mine. She agreed. She helped me walk to Price Rite to get some food and we returned to my apartment. There was a strange guy inside the building watching us by the elevators and must of heard me tell her the floor and apartment number.

31. Because at about 6:00am the following day, he was knocking at my door, asking for Richard, saying his girlfriend was in my apartment. I told him to leave and that I was calling security, which I did as I had been told to do. I made a report but <u>no security ever responded</u> to deal with him and see if one of their tenants (me) was alright.

32. At about 9:00am that same day, there was a knock on my door. It was defendant Kelly. Upon opening the door, he saw Monoya sleeping and said: "another black woman? You are finished, am going to start the eviction process now." Monoya had woken up from the loud knock and heard all of this racial profiling.

33. I proceeded to go out to the elevators and explained to him what happened. He waved me off saying "what is it with you and the black women? You are going to be kicked out on the street where you belong." I went back in my apartment and Monoya was coming out, leaving with tears in her eyes.

34. On both December 15 and 16, in the early morning hours, (4) more people got into the building (<u>presumably due the unsecure front door</u>), 2 females and 2 males who came to Plaintiff's door, banging on it looking for Richard. After telling them he does not live here, the 2 men both <u>threatened me</u> stating: "I am going to wait for you in the stairwell and beat the crap out of you when you come out" and "I know what you look like, will see you on the street motherfucker."

35. I called security to report it and there was no answer.  Plaintiff is <u>afraid for his life, feel unsafe</u> from both defendants Kelly and Connelly trying to <u>set me up, illegally evict me</u>, and the ongoing <u>persons jimmying the allegedly secure door that both defendants refuse to repair, and coming to and threatening me, to see Richard, at my apartment. See attached photo of the outside of the security door.</u>

## FIRST CAUSE OF ACTION

36. Under the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) of 1978, defendants Kelly and Connelly intentionally, with indifference, violated and are continuing to violate Plaintiff's rights, pursuant to the Fair Housing Act of 1988 (42

U.S.C. 3601) and RA Section 504 (29 U.S.C. 794), as a certified physical and mentally disabled person whose disabilities substantially limit major life activities that are recorded, when they deliberately, maliciously, and repeatedly threatened to get Plaintiff, to evict Plaintiff, are trying now to evict Plaintiff with no legal standing, and intentionally refusing to fix the unsecure front door effectuating persons to illegally enter the building to come up to harass and threaten Plaintiff with serious physical injury.

### SECOND CAUSE OF ACTION

37. Under the First Amendment of the U.S. Constitution, defendants Kelly and Connelly intentionally, with indifference, violated Plaintiff's rights to free speech and the right to assemble peaceably (in my apartment) when they deliberately, maliciously, and repeatedly would not allow Plaintiff to explain the facts surrounding innocent normal things like having people visit me in my apartment, refused to listen to Plaintiff, racially profiled black women after my speaking to them about my guests, told Plaintiff he can not peaceably assemble in my apartment, threatened to get Plaintiff, to evict Plaintiff, and currently are trying to evict Plaintiff.

### THIRD CAUSE OF ACTION

38. Under the Eighth Amendment of the U.S. Constitution, defendants Kelly and Connelly intentionally, with indifference, violated and continue to violate Plaintiff's rights to be free from cruel and unusual punishment when they deliberately, maliciously, and repeatedly threatened to get Plaintiff, to evict Plaintiff, are presently trying to evict Plaintiff, steadfastly refuse to repair the lobby security door effectuating persons who do not reside in the building to gain access, come up to Plaintiff's apartment to harass and threaten Plaintiff with serious bodily injury, having caused Plaintiff to continue to suffer extreme emotional distress, mental anguish, and now paranoia (for almost 4 months now) resulting in Plaintiff to have to:

   a. Barricade his apartment door with a broom, heavy objects, and Pepsi bottles as an alarm if they get in,
   b. See shadows underneath my apartment door,
   c. Occasionally hear someone at my door trying to get in,
   d. Becoming hypervigilant, turning often to observe my environment,
   e. Causing my recall to become impaired (decrease in attention and concentration, intrusive thoughts),

    f.  Have significant trouble with word finding, often stutter,

    g.  Have become very depressed, tearful, afraid to leave and return to my apartment, and am decompensating.

## FOURTH CAUSE OF ACTION

39. Under the Fourteenth Amendment of the U.S. Constitution, defendants Kelly and Connelly intentionally, with indifference, violated and continue to violate Plaintiff rights to Due Process of Law when they maliciously, deliberately, and repeatedly threatened to get Plaintiff, to evict Plaintiff, are trying to evict Plaintiff, refuse to repair the security door (see attached) all depriving Plaintiff due process of law, to have life, liberty, and property, as well as depriving plaintiff of equal protection of the law, particularly when Plaintiff is a 62 year old certified disabled person, causing Plaintiff to fear for his life and feel totally unsafe in his apartment.

## PRAYER FOR RELIEF

40. Plaintiff humbly and respectfully requests this Honorable Court to please:

    a.  Order an immediate Temporary Injunction/Stay prohibiting defendants from evicting Plaintiff without the required due process of law,

    b.  Order a Mediation meeting allowing Plaintiff to meet with defendants to possibly reach a mutually beneficial arrangement regarding a payment plan for past due rent, moving Plaintiff to a different apartment, and if they do not consent, then

    c.  Award Plaintiff compensatory and punitive damages in the amount of $125,000.00 for each defendant, total: $250,000.00.  Thank you.

Sworn to before me this
20th day of December, 2022.

*Kevin Byng*
Kevin Byng, Plaintiff

Respectfully submitted,

*Kevin Byng*
KevinByng

Enc: Attachment  *Ruth H Cosgrove*

RUTH H. COSGROVE
Notary Public, State of New York
Reg. # 01CO6162980
Qualified in Oneida County
My Commission Expires March 19, 20 23

8

