## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

KEVIN V. BYNG,

                                          Plaintiff,

              v.                                                    6:22-CV-1406
                                                                    (DNH/ATB)
BOB KELLY, et al.,

                                          Defendants.

KEVIN V. BYNG, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review a complaint purportedly brought

pursuant to 42 U.S.C. § 1983, filed by plaintiff Kevin Byng.  (Dkt. No. 1) ("Compl.").

Plaintiff has also moved to proceed in forma pauperis.  (Dkt. No. 2).

## I.   **IFP Application**

Plaintiff declares in his IFP application that he is unable to pay the filing fee.

(Dkt. No. 2).  After reviewing his application and supporting documents, this court

finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria

to proceed IFP, the court must also consider the sufficiency of the allegations set forth

in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall

dismiss the case at any time if the court determines that the action is (i) frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915

(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First E. Seventh St. Tenants Corp*., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp*., 550 U.S. at 555).

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 does not require detailed factual allegations, it does "demand[] more than an

2

unadorned, the-defendant-unlawfully-harmed-me accusation." *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Ashcroft*, 556 U.S. at 678). A pleading that contains allegations that "'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal." *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II.   Complaint[1]

Plaintiff is a sixty-two year old man "with serious debilitating medical" and mental health issues.[2] (Compl. ¶ 2). Plaintiff moved into an apartment at Perretta Towers leased through the Utica Municipal Housing Authority[3] ("UMHA") on September 1, 2022. (*Id.* ¶ 10). Defendant Bob Kelly was the Executive Director ("E.D.") of the UMHA, while defendant Bob Connelly was responsible for security at Perretta Towers.

Plaintiff alleges the former occupant of his apartment was a drug dealer who ran a prostitution ring out of the apartment. (*Id.* ¶ 15). Because of the prior occupant's activities, there were numerous individuals "knocking on [plaintiff's] door at all hours

---

[1] Except as otherwise noted, these facts are as alleged in plaintiff's Complaint.

[2] Plaintiff's alleged medical impairments include: Diabetes 2, COPD, Chronic Leukemia, Chronic Fatigue, High Blood Pressure, Heart Arrhythmia, Slipped Discs, Covid-19, Anxiety, Depression, PTSD, and Impaired Cognitive Behavioral Function. (Compl. ¶ 3).

[3] The Utica Municipal Housing Authority is now operating under the name of People First. *See Home Page*, People First NY, https://www.peoplefirstny.org/ (last visited Feb. 16, 2023).

of the night" and threatening him when he didn't answer the door. (*Id.* ¶ 14). When plaintiff reported these incidents to defendant Connelly, Connelly told plaintiff he was "full of shit" and that he would "get" him. (*Id.* ¶ 15). When plaintiff informed Connelly that unauthorized individuals could gain entry to his building by "pulling hard on the locked security door[,]" Connelly did not address the issue. (*Id.* ¶ 24). Plaintiff later wrote a letter to E.D. Kelly about his safety and health concerns, but never received a response. (*Id.* ¶¶ 20-21). On several occasions, plaintiff called for security but no one responded. (*Id.* ¶¶ 31, 35).

Shortly after moving into Perretta Towers, plaintiff was ordered to Connelly's office after having "a few women over to his apartment". (Compl. ¶ 11). Connelly accused plaintiff of selling drugs, and told him "it is my job to build a case against you to evict you, and I am going to get you." (*Id.* ¶ 12). When plaintiff informed two residents and two UMHA employees about Connelly's threat, they told him that Connelly is "no good and threatens people all the time." (*Id.* ¶ 13).

In October of 2022, plaintiff had "another guest stay . . . with him overnight[.]" (*Id.* ¶ 16). She returned two days later "screaming outside that two . . . men were trying to rape her." (*Id.* ¶ 16). These men were actually members of the Utica Police Department who were searching for the woman. (*Id.* ¶ 17). The next day, plaintiff was called down to E.D. Kelly's office. (*Id.* ¶ 18). E.D. Kelly threatened to evict plaintiff and prohibited him from having anymore overnight guests. (*Id.*). After his meeting with E.D. Kelly, Connelly threatened plaintiff, stating ". . . I am going to Mr. Kelly's office to get you evicted." (*Id.* ¶ 19).

In November of 2022, plaintiff began dating "an African American woman named Zhane Barnes," whose mother lived in the same building as plaintiff. (Compl. ¶ 22). Ms. Barnes stayed overnight at plaintiff's apartment on a few occasions, without issue. (*Id.* ¶¶ 22, 23). Then, on one occasion when plaintiff and Ms. Barnes were entering the community room at Perretta Towers, E.D. Kelly approached the two of them, screaming "that black woman does not live here, she is not allowed in this building, you are going to be evicted." (*Id.* ¶ 23). Plaintiff decided not to see Ms. Barnes anymore because of the "racial profiling and fear of being evicted." (*Id.* ¶ 25). Ms. Barnes was later buzzed in by her mother, and went to plaintiff's apartment uninvited where he informed her that they could not see each other anymore. (*Id.*). The next day, plaintiff was called down to E.D. Kelly's office again. (*Id.* ¶ 26). During this meeting, E.D. Kelly stated "it is your fault for what happened last night with that black woman. I am going to evict you." (*Id.* ¶ 26).

At the end of November of 2022, when plaintiff was suffering from Covid-19, he asked his friend Monoya Houston, who was an African American woman, to stay with him to help him during his recovery. (*Id.* ¶¶ 29-30). While Ms. Houston was staying with plaintiff, defendant E.D. Kelly knocked on his door at 9 a.m. (*Id.* ¶ 32). When he saw Ms. Houston sleeping, E.D. Kelly stated "another black woman? You are finished, am [sic] going to start the eviction process now." (*Id.*). When plaintiff tried to explain why she was staying there, E.D. Kelly said "what is it with you and the black women? You are going to be kicked out on the street, where you belong." (*Id.* ¶ 33).

Plaintiff requests a temporary injunction to "prohibit[] defendants from evicting

[p]laintiff without the required due process of law[,]" and a mediation session with the defendants to create a payment plan for past due rent or, in the alternative, damages in the amount of $250,000.  (Compl. ¶ 40).

### III.   <u>Section 1983</u>

Because plaintiff is a pro se litigant, the court must "read his supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  Plaintiff's allegations that defendants violated his First Amendment right to freedom of association most strongly suggest a claim under 42 U.S.C. § 1983.

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983.  Thus, to state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *See West v. Atkins*, 487 U.S. 42, 48-49 (1988).  Private parties are generally not state actors, and are therefore not usually liable under Section 1983. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties. . . .") (internal quotation marks and citation omitted).

For the purposes of section 1983, the actions of a nominally private entity are

attributable to the state when:

> (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test').

*Caballero v. Shayna*, No. 18-CV-1627, 2019 WL 2491717, at *3 (E.D.N.Y. June 14, 2019) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008. "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

The UMHA is a public housing authority that provides elderly, disabled, and low income families with affordable housing through United States Department of Housing and Urban Development funding.[4]  Courts have found public housing authorities are state actors for the purposes of Section § 1983.  *See Davis v. N.Y.C. Hous. Auth.*, 379 F. Supp. 3d 237, 252, 256 (S.D.N.Y. 2019) (referring to a public housing authority as a state actor); *Gagliardi v E. Hartford Hous. Auth.*, No. Civ. 3:02CV478, 2005 WL 2177078, at *4 (D. Conn. Sept. 8, 2005); *Burr v. New Rochelle Mun. Hous. Auth.*, 479 F.2d 1165, 1167 (2d Cir. 1973) (rejecting municipal housing authority's claim that it is not a government agency and that, therefore, there was no state action); *cf. Tyson v. N.Y.C. Hous. Auth.*, 369 F. Supp. 513, 522 (S.D.N.Y. 1974) ("The defendants' action in

---

[4] *See Section 811 Project*, People First NY
https://www.peoplefirstny.org/about/grants/section-811-project/ (last visited Feb. 16, 2023)

adjudging the plaintiffs nondesirable tenants and in ordering their eviction are acts of the state and therefore satisfy the state action requirement of Section 1983."); *Short v. Fulton Redevelopment Co., Inc.*, 390 F. Supp. 517, 519 (S.D.N.Y. 1975) (concluding "that the involvement of the Federal, State and local governments in these two housing projects is sufficient to constitute State action under the Fourteenth Amendment"). Therefore, this court finds that UMHA is a state actor under Section 1983 for purposes of this initial review and that the individual defendants, employees of UMHA, acted under color of state law.  The court will now discuss the specific rights at issue in this case.

###### A.    First Amendment

Plaintiff alleges his First Amendment right of freedom of association has been violated by the defendants.  (Compl. ¶ 37).  The court notes that there is no generalized right of "social association."  *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989).  There are however, two types of freedom of association claims that are protected under the constitution – "intimate association" and "expressive association."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984).  The freedom to intimate association protects "choices to enter into and maintain certain intimate human relationships" including "those that attend [to] the creation and sustenance of a family."  *Id.* at 617-19.  The freedom to expressive association protects "a right to associate for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion."  *Id.* at 618.  The language in plaintiff's complaint suggests that plaintiff is alleging a violation of his

right to intimate association.

The Second Circuit has held the First Amendment, as well as the right to privacy, protects public housing residents' "freedom to have whomever they want[ ] visit their homes, subject only to narrowly tailored intrusions that advance the government's legitimate interests in maintaining safe, decent housing and in keeping track of occupancy and eligibility in public housing." *McKenna v. Peekskill Hous. Auth.*, 647 F.2d 332, 335 (2d Cir. 1981), *Davis v. City of New York*, 902 F. Supp. 2d 405, 435 (S.D.N.Y. 2012) (internal quotation marks omitted); *see also Lafayette v. Frank*, 688 F. Supp. 138, 145 n.1 (D. Vt. 1988) (citation omitted).

Plaintiff alleges that his right to intimate relationships has been impaired by defendants' actions. First, plaintiff was not allowed to have any overnight guests in his apartment despite the official UMHA policy allowing guests to stay for up to two weeks. (Compl. ¶¶ 16, 18, 37). Second, plaintiff's guests were verbally harassed by E.D. Kelly when they were visiting plaintiff, resulting in one of his guests leaving his apartment crying. (*Id.* ¶¶ 23, 32, 33). Defendants' actions caused plaintiff to end his relationship with Ms. Barnes against his wishes. (*Id.* ¶ 25). At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleading must be liberally construed, the court finds that plaintiff's First Amendment freedom of association claims as asserted against defendants Kelly and Connelly survive sua sponte review and require a response. *See, e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). In so ruling, the court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### B.   Eighth Amendment

Plaintiff further alleges that defendants have violated his Eighth Amendment rights by threatening to evict plaintiff and failing to repair the lobby door lock.  (Compl. 38).  However, there is no viable claim under the Eighth Amendment's prohibition of cruel and unusual punishment because "the Eighth Amendment applies only to convicted prisoners."  *Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 443 (S.D.N.Y. 2016); *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.") (quoting *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977).  Plaintiff has not alleged that he has been confined or convicted by the defendants.  (*See generally* Compl.).

### C.   42 U.S.C. § 1437(d)

Plaintiff alleges defendants failed to provide safe housing.  (Compl. ¶ 39). Specifically, plaintiff alleges defendants' refusal to repair the lobby door lock, allowing unauthorized individuals entry to his building, caused an unsafe environment.  (*Id.* ¶¶ 24, 38).  These individuals harassed plaintiff on multiple occasions by threatening him and pounding on his door at all hours of the night.  (*Id.* ¶¶ 14, 20, 24, 30-31, 34-36, 38). Plaintiff acknowledges the unauthorized individuals were going to his apartment looking for the prior occupant because the prior occupant used to sell drugs and run a prostitution ring out of the apartment.  (*Id.* ¶¶ 10, 14-15, 24, 31, 34, 38).  However, plaintiff did report the trespassers' entry to the building and the lobby door lock

deficiencies to defendants.  (*Id.* ¶¶ 20, 24).

Plaintiff alleges that defendant Connelly was in charge of security at Perretta Towers.  He further alleges that there was some sort of security reporting program in place, and that an unnamed individual told him to report incidents to security.  (*Id.* ¶¶ 4, 31).  Plaintiff has not alleged any issues with the lock to his personal apartment.  The harm allegedly was not physical, but he does claim to have suffered "severe" mental distress.  (*Id.* ¶ 21).

To the extent that plaintiff is seeking relief under 42 U.S.C. §1983 for allegations concerning security issues at Perretta Towers, such a claim cannot be sustained.  Although defendant Connelly is a state actor who could be held liable under Section 1983 for violating plaintiff's rights under federal law, plaintiff has failed to show that federal law grants him any right to security for public housing or a functioning building lock.

42 U.S.C. § 1437d(l)(3) provides: "Each public housing agency shall utilize leases which . . . obligate the public housing agency to maintain the project in a decent, safe, and sanitary condition."  42 U.S.C. § 1437d(l)(3).  While Section 1437d(l)(3) arguably creates the right to a lease with terms that obligate the UMHA to maintain housing that is safe, habitable, and adequately heated, the text of this provision, on its face, does not create a right for residents to enforce the violation of such lease terms against UMHA in federal court.  Indeed, "[e]very court to address this issue has determined that a habitable residence is not a right guaranteed by § 1437(d)(l)(3)." *Paige v. N.Y.C. Hous. Auth.*, No. 17 Civ. 7481, 2018 WL 1226024, at *4 (S.D.N.Y.

Mar. 9, 2018); *see Concerned Tenants Ass'n of Father Panik Vill. v. Pierce*, 685 F. Supp. 316, 322 (D. Conn. 1988) ("A simple reading of [§ 1437(d)(l)(3)], however, indicates that [it] alone does not create a right enforceable under § 1983 to proper maintenance of the housing project."); *cf. Davis*, 902 F. Supp. 2d at 442 (reasoning that the adjacent § 1437d(l)(2) does not permit a claim under § 1983 "that NYCHA has violated the terms or conditions of the lease").   Therefore, plaintiff cannot maintain a claim against the defendants premised on Section 1437d(l)(3), based on the alleged deprivation of a right to adequate housing conditions.  *See Davis v. N.Y.C. Hous. Auth.*, 379 F. Supp. 3d 237, 246-48 (S.D.N.Y. 2019).

###### D.    Fourteenth Amendment

The Fourteenth Amendment provides that a state may not deprive a person of liberty or property "without due process of law."  U.S. Const. amend. XIV.  The Due Process Clause contains both a procedural and substantive component.  Procedural due process claims concern the "adequacy of the procedure provided by [a] governmental body for the protection of liberty or property rights of an individual."  *Sanchez v. Univ. of Conn. Health Care*, 292 F. Supp. 2d 385, 397 (D. Conn. 2003) (quoting *DeLeon v. Little*, 981 F. Supp. 728, 734 (D. Conn. 1997)).  To successfully state a claim under Section 1983 for denial of procedural due process, a plaintiff must show that he or she (1) possessed an actual liberty or property interest, and (2) was deprived of that interest without being afforded sufficient process.  *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004); *see also Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted).  While plaintiff has a property interest with respect to eviction from public

housing,[5] plaintiff's complaint cannot state a procedural due process claim, because plaintiff acknowledges that he has not been evicted, nor have eviction proceedings been commenced.

In addition to its governance over fair process, the Fourteenth Amendment "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (internal quotation marks and citations omitted)).

> Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective. . . . The interference with the plaintiff's protected right must be so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.

*Id.* (quoting *Southerland v. City of New York*, 680 F.3d 127, 151-52 (2d Cir. 2012)) (internal quotation marks and citation omitted).

"Substantive due process protections extend only to those interests that are 'implicit in the concept of ordered liberty,' which are rights 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Smith v. Hogan*, 794 F.3d 249, 255-56 (2d Cir. 2015) (citations omitted). These interests include, "among other things, an individual's right to bodily integrity free from unjustifiable

---

[5] "It is well established that the government cannot deprive public housing tenants of their continued tenancy without due process of law." *Britt v. Elm City Communities*, No. 3:17-CV-2159, 2019 WL 2452349, at *4 (D. Conn. June 12, 2019) (citing *Escalera v. N.Y.C. Hous. Auth.*, 425 F.2d 853, 861 (2d Cir. 1970) ("The government cannot deprive a private citizen of his continued tenancy, without affording him adequate procedural safeguards even if public housing could be deemed to be a privilege.")).

governmental interference." *Lombardi v. Whitman*, 485 F. 3d 73, 79 (2d Cir. 2007)

(citing *Washington v. Glucksberg*). It is this variety of interest that plaintiff invokes in

his Section 1983 claim: the rights to bodily safety, integrity and liberty. (Compl. ¶ 39).

The court, however, finds that the defendants alleged conduct does not rise to the level

of a substantive due process violation, for the reasons stated below.

A.    **Housing Conditions**

In *Davis v. New York City Housing Authority*, the defendants left plaintiffs with

inadequate heating, leaving apartments with temperatures "seldom exceed[ing] 51

degrees" and "often freezing or below freezing." *Davis v. N.Y.C. Hous. Auth.*, 379 F.

Supp. 3d 237, 243 (S.D.N.Y. 2019). The residents were also occasionally "left without

hot water, including a four-day stretch. . . ." *Id.* The court found the residents

adequately pled a substantive due process claim regarding a right to bodily integrity. *Id.*

at 257. The court specifically found defendant's conduct

> shocked the conscience due to three factors: (i) the 'inhumane' conditions to
> which residents without adequate heating [were] subjected, with reference
> to statements of public officials and news articles decrying the conditions;
> (ii) the fact that [d]efendants were previously sued and recently reached a
> settlement on the issue of heating in public housing; and (iii) the fact that
> [d]efendants actions were not the short-term product of an emergency, but
> rather were deliberate and have subjected [plaintiff] to habitation in freezing
> temperatures for years.

*Id.* at 256.

Here, plaintiff's complaints regarding his right to bodily integrity specifically

related to defendant's alleged threats to evict plaintiff and a broken lobby door lock

does not describe conditions or conduct so egregious to invoke plaintiff's due process

rights. (Compl. ¶ 39). First, plaintiff has not alleged any conduct beyond the alleged

threats of eviction, to show that his "extreme emotional distress, mental anguish, and []
paranoia" were warranted.  (*Id.* ¶ 38).  It does not appear from the complaint that
eviction proceedings were initiated, or that plaintiff is at imminent risk of being
homeless.  Second, plaintiff has not alleged that there have been any issues with his
apartment door lock or unauthorized entry into his specific apartment.  Third, unlike the
plaintiffs in *Davis*, plaintiff has not endured the broken lobby door lock for a matter of
years.[6]  While the court acknowledges that the harassment from unauthorized
individuals is problematic, it does not shock the conscience in the same manner as
*Davis*.

### B.   Failure to Protect

Additionally, the defendants did not have an obligation to protect plaintiff merely
because he is a public housing tenant.  *See Paige*, 2018 WL 1226024, at *10.  In order
to make a claim for failure to provide police protection, plaintiff "must prove that (1) a
special relationship existed between [him] and defendants [] creating an actionable legal
duty . . . to provide [him] with police protection, and (2) defendants [] were negligent in
failing to provide him with police protection."  *Merced v. City of New York*, 986 F.
Supp. 774, 780 (S.D.N.Y. 1997).  A special relationship exists where "a government
actor [] assume[s] an obligation to protect an individual by restricting the individual's
freedom in some manner, as by imprisonment."  *Lombardi*, 485 F. 3d at 79 n.3.  Courts
have found there is no special relationship between a public housing provider and its

---

[6] It is unclear based on a reading of the complaint exactly when the lobby door lock was
broken.  Even if the lock was broken for the entirety of plaintiff's tenancy up to the filing date of
the complaint, the time period would only be approximately four months.  (Compl. ¶ 2).

tenants, because tenants entering into public housing do so willingly and may leave the program when they desire. *Paige*, 2018 WL 1226024, at \*10-11 (citing *Dawson v. Milwaukee Hous. Auth.*, 930 F.2d 1283, 1284 (7th Cir. 1991)); *Royster v. Am. Cyanamid Co.*, No. 3:06cv358, 2006 WL 2729496, at \*3 (N.D. Fla. Sept. 25, 2006). Therefore, in this case, there is no special relationship invoking the duty to provide protection, because the UMHA does not restrict plaintiff's freedom in any manner – plaintiff is free to accept UMHA's housing or find another place to reside. As there is no special relationship between plaintiff and UMHA, there can be no substantive due process violation for failure to protect.

## IV.   **American Disability Act/ Rehabilitation Act/ Fair Housing Act**

For the purposes of clarity and consistency, the court deems it prudent to clarify certain mislabeled causes of action in the complaint. Plaintiff's allegations regarding the American with Disabilities Act ("ADA"), 42 U.S.C. § 12182, would fall under Title III of the ADA. Plaintiff's allegations regarding the Rehabilitative Act ("RA") would fall under 29 U.S.C. § 794.

The FHA and the ADA impose similar anti-discrimination standards for persons who suffer from disabilities and, due to their similarities, can be analyzed "in tandem." *See Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 n.4 (2d Cir. 2003), *superseded by regulation on other grounds as stated in Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 617 (2d Cir. 2016). Under the ADA, FHA, and RA, a plaintiff "may proceed under any or all of three theories: disparate treatment, disparate impact, and failure to make reasonable accommodation." *Reg'l Econ. Cmty. Action Program,*

16

*Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002), *superseded by statute on other grounds*, ADA Amendments of 2008, Pub. L. No. 110-325, 122 Stat. 3553, 3555-59 (2008).  Here, plaintiff has not sufficiently pled any claims under the ADA or RA because he has not alleged any facts showing the defendants' actions were taken because of plaintiff's disabilities.  *Barone v. Laws.' Fund for Client Prot.*, No. 22-58, 2023 WL 1975783, at *2 (2d Cir. Feb. 14, 2023) (dismissing claims under Title II of the ADA because plaintiff's complaint did not contain "plausible allegations that either of the [d]efendants' actions were taken *by reason* of his PTSD, or even that they were *aware* of his PTSD").

Plaintiff's first cause of action alleges housing discrimination in violation of 42 U.S.C. § 3601 generally, without specifying the applicable subsection of the FHA. Because the cause of action alleges housing discrimination based on a disability, the court treats it as a cause of action under Section 3604(2).  Similarly to the RA and ADA claims, his FHA claims with respect to disability discrimination fail as his complaint is devoid of any facts showing that he was discriminated against because of his disability.

The FHA also provides that "it shall be unlawful . . . to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . race [or] color"  42 U.S.C. § 3604(b).  The FHA also forbids "coerc[ing], intimidat[ing], threaten[ing], or interfer[ing] with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or

protected by section . . . 3604 . . . . " 42 U.S.C. § 3617. Courts in this Circuit have construed Section 3604(b) of the FHA to prohibit the creation of a "hostile environment" by individuals who have control or authority over the "terms, conditions, or privileges of sale or rental of a dwelling." *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 277 (S.D.N.Y. 2019) (citations omitted).

A plaintiff bringing a post-acquisition hostile housing environment claim under Section 3617 of the FHA must plead and prove (1) that he was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile housing environment; (2) that the harassment was because of the plaintiff's membership in a protected class; and (3) that a basis exists for imputing the allegedly harassing conduct to the defendant. *A.L.M. ex rel. Moore v. Bd. of Managers of Vireum Schoolhouse Condo.*, No. 19-2771-CV, 2021 WL 5121137, at *1 (2d Cir. Nov. 4, 2021) (summary order); *see also Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 862 (7th Cir. 2018).

With respect to plaintiff's FHA racial discrimination claims, plaintiff has not alleged any facts showing defendant Connelly discriminated against him on the basis of race. However, his FHA racial discrimination claims against defendant Kelly survive sua sponte review and require a response.[7] *Cox v. City of Dallas*, 430 F.3d 734, 746 (5th Cir. 2005) (finding if a landlord "refused to continue renting to a tenant because the tenant entertained black guests," such conduct, amounting to a constructive eviction, would constitute discrimination in the "terms, conditions, or privileges of . . . rental,"

---

[7] Plaintiff alleges he was threatened, harassed, and denied overnight guest privileges by defendant Kelly because of his association with African American woman. (Compl. ¶¶ 5, 23, 26, 32-33, 37).

and would be cognizable under § 3604(b)"); *See, e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).  In so ruling, the court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

## V.  **Temporary Injunction**

Plaintiff requests a temporary injunction "prohibiting defendants from evicting [p]laintiff without the required due process of law."[8]  (Compl. ¶ 40).

> To receive a preliminary injunction, the plaintiff must show (1) "a likelihood of success on the merits," (2) "that [the plaintiff] is likely to suffer irreparable injury in the absence of an injunction," (3) that "the balance of hardships tips in the plaintiff's favor," and (4) "that the public interest would not be disserved by the issuance of [the] injunction." *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010) (internal quotation marks omitted).  "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (per curiam) (alteration in original) (emphasis in original) (internal quotation marks omitted).

*Capstone Logistics Holdings, Inc. v Navarrete*, 736 F. App'x 25, 26 (2d Cir. 2018) (summary order).

Some courts have found that the threat of "imminent and actual eviction" is

---

[8]  If a state court eviction or other proceeding was pending in this case, this court would also consider whether it lacked jurisdiction under the abstention doctrine pursuant to *Younger v. Harris*, 401 U.S. 37, 43-45 (1971).  Pursuant to *Younger*, the District Court is without jurisdiction under the abstention doctrine if there is an ongoing state proceeding; where an important state interest is implicated; and the plaintiff has an avenue open for review of constitutional claims in state court.  *See Parent v. New York*, 485 F. App'x 500, 503 (2d Cir. 2012) (quoting *Younger, supra*; *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 1997)).  The *Younger* doctrine originally applied only to criminal proceedings, but is now applicable to civil actions as well, including state administrative proceedings.  *Id.* (citations omitted).  The doctrine also applies to claims for declaratory and injunctive relief.  *Id.*  In this case, if a state court action was pending, the above factors would dictate that the court abstain from consideration of plaintiff's issues as there is no indication that plaintiff does not have an avenue for consideration of his issues in state court.

sufficient to establish irreparable harm for a preliminary injunction.  *See Oliva v. Brookwood Coram I, LLC*, No. 14-CV-2513, 2015 WL 13745439, at *6 (E.D.N.Y. Nov. 30, 2015) (collecting cases), *report and recommendation adopted*, 2016 WL 3637010 (E.D.N.Y. June 30, 2016).  But when tenants have sought to enjoin their possible eviction without a proceeding pending and an "imminent threat of homelessness," courts have found no irreparable harm and therefore have declined to enter a preliminary injunction against potential eviction.  *See, e.g.*, *id.* at *6-8 (finding no irreparable harm where "there is presently no eviction proceeding pending against [the] [p]laintiff . . . [and even] the commencement of those proceedings would not place [the] [p]laintiff in imminent threat of homelessness"); *Allen v. N.Y.C. Hous. Auth.*, No. 10 Civ. 168, 2010 WL 1644956, at *4 (S.D.N.Y. Apr. 20, 2010) (concluding that "any harm is far from imminent" because "[n]o Housing Court proceeding is currently pending against [p]laintiff and, even if the NYCHA decides to evict [p]laintiff based on the termination of his tenancy, it must first serve him with a notice to vacate, commence a holdover proceeding in Housing Court, and obtain a judgment of possession and a warrant of eviction").

Here, plaintiff does not allege that any eviction action is pending against him in state court but does reference many occasions where defendants have threatened to evict him.  (Compl. ¶¶ 12, 18-19, 23, 26, 32-33, 35-39).  The mere threat of proceedings that might possibly lead to plaintiff's eviction at some unknown time in the future does not suffice to show irreparable harm.  *See Oliva*, 2015 WL 13745439, at *7 ("[The plaintiff's] alleged threat of eviction is not imminent and he therefore fails to make the

threshold showing necessary to [demonstrate] irreparable harm."). Therefore, the court recommends denying plaintiff's request for a preliminary injunction.

## VI.   **Opportunity to Amend**

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

The claims based on the ADA, RA, and FHA may be dismissed without prejudice, with the opportunity to amend, because plaintiff has alleged that he was disabled at the time. (Compl. ¶¶ 3, 36). In amending his complaint, plaintiff may allege any facts tending to show that defendants both knew about his disability and somehow discriminated against him specifically because of his disability. The court is also recommending plaintiff's FHA claim with respect to racial discrimination against defendant Connelly be dismissed without prejudice, with the opportunity to amend, because the court cannot state that plaintiff would not be able to amend his complaint with sufficient detail to show that defendant Connelly did participate in the alleged racial discrimination.

However, the court is recommending plaintiff's Eighth Amendment claims be dismissed with prejudice as against each named defendant, because there is no

amendment that can be made to constitute a cognizable Eighth Amendment claim.  The court is similarly recommending that plaintiff's imputed 42 U.S.C. § 1437d(l)(3) claim against the named defendants be dismissed with prejudice because Section 1437d(l)(3) is not actionable under Section 1983, or any other vehicle to bring suit in federal court. The court also recommends that plaintiff's Fourteenth Amendment substantive due process claims be dismissed with prejudice, because plaintiff has not alleged any facts leading the court to believe any amendment would show the defendant's conduct rose to the level of a substantive due process violation or that there was a special relationship between the defendants and plaintiff.

Plaintiff should not submit a proposed amended complaint until the District Court rules on this Report and Recommendation.  If the court approves this recommendation and allows plaintiff to submit a proposed amended complaint, plaintiff should be warned that any amended complaint must be a ***complete and separate pleading***. Plaintiff must state all of his claims in the new pleading and may ***not*** incorporate by reference any part of his original complaint.  Plaintiff is reminded that claims which the district court dismisses with prejudice should not be raised in any subsequently amended complaint.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**, and it is

**RECOMMENDED**, that plaintiff's First Amendment freedom of association claim against defendants Kelly and Connelly should survive initial review and require a

response, and it is

**RECOMMENDED**, that plaintiff's Fair Housing Act racial discrimination claim against defendant Kelly should survive initial review and require a response, and it is

**RECOMMENDED**, that plaintiff's Fair Housing Act racial discrimination claim against defendant Connelly be **DISMISSED WITHOUT PREJUDICE, BUT WITH THE OPPORTUNITY TO AMEND**, if plaintiff can show this defendant also participated in the racial discrimination, and it is

**RECOMMENDED**, that plaintiff's Eighth Amendment cruel and unusual punishment claim against defendants Kelly and Connelly be **DISMISSED WITH PREJUDICE**, and it is

**RECOMMENDED**, that plaintiff's imputed 42 U.S.C. 1437d(l)(3) claim against defendants Kelly and Connelly be **DISMISSED WITH PREJUDICE**, and it is

**RECOMMENDED**, that plaintiff's Fourteenth Amendment substantive due process claims against defendants Kelly and Connelly be **DISMISSED WITH PREJUDICE**, and it is

**RECOMMENDED**, that all remaining claims be **DISMISSED WITHOUT PREJUDICE, BUT WITH THE OPPORTUNITY TO AMEND**, and it is

**RECOMMENDED**, that the request for Temporary Injunction be **DENIED**, and it is

**RECOMMENDED**, that if the District Judge adopts this recommendation, plaintiff be given forty-five (45) days to amend his complaint to the extent authorized, and that plaintiff be advised that any amended pleading must be a **COMPLETE**

**PLEADING, WHICH WILL SUPERCEDE THE ORIGINAL**, and that plaintiff must include all remaining facts and causes of action in the amended complaint. **No facts or claims from the original complaint may be incorporated by reference**, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, and plaintiff does not elect to amend his complaint, the case be returned to me for any orders relating to service of the complaint on the remaining defendants, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation, and plaintiff files a proposed amended complaint, the proposed amended complaint be returned to me for review of the amended complaint and any further orders relating to service on the defendants, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail, and it is

**ORDERED**, that while plaintiff may file objections to this Order and Report-Recommendation, he should wait for the District Court to rule on the above Orders and Recommendations before plaintiff submits any proposed amended pleading.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R.

Civ. P. 6(a), 6(e), 72.


Dated:  February 24, 2023

_____
Andrew T. Baxter
U.S. Magistrate Judge